UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL L. DECKER,

                                                          Plaintiff,

                            v.                                             9:09-CV-0239
                                                                          (TJM/GJD)

MICHAEL F. HOGAN, Commissioner, NYS Office of
Mental Health; DONALD SAWYER, Executive Director,
Central New York Psychiatric Center,

                                                      Defendants.
_____

APPEARANCES:                                   OF COUNSEL:

MICHAEL L. DECKER
Plaintiff, *pro se*

OFFICE OF THE ATTORNEY GENERAL        CHARLES J. QUACKENBUSH, ESQ.
State of New York                                    Assistant Attorney General
Attorney for Defendants

THOMAS J. McAVOY, SENIOR JUDGE

## MEMORANDUM-DECISION AND ORDER

**I.    Introduction**

      Plaintiff Michael L. Decker commenced this action *pro se* seeking relief pursuant to 42 U.S.C. § 1983 for the alleged violation of his constitutional rights. Dkt. No. 1. Plaintiff is a civil detainee under Article 10 of the New York Mental Health Law, and has been confined at the Central New York Psychiatric Center ("CNYPC") since August, 2008. Plaintiff challenges the constitutionality of three aspects of the Sexual Offender Treatment Program ("SOTP") administered by the New York State Office of Mental Health ("OMH") at CNYPC. Plaintiff claims that the SOTP utilizes treatment programs which are faith-based, and that the requirement that he participate in those programs violates his rights under the First Amendment. *Id*. at 2-3. Plaintiff also claims

that SOTP-required polygraph and penile plethysmography ("PPG")[1] examinations are unconstitutional. *Id*. at 3-4. According to plaintiff, successful completion of the SOTP is a condition of his release from CNYPC. *Id*. at 3-4. Named as defendants are Michael Hogan, Commissioner of OMH, and Donald Sawyer, Executive Director of CNYPC. Plaintiff seeks monetary damages as well as declaratory and injunctive relief.[2]

In addition to his complaint, plaintiff filed a motion seeking a temporary restraining order and preliminary injunction enjoining defendants from mandating participation in faith-based programs and from requiring polygraph or PPG examinations as a part of the SOTP. Dkt. No. 3-2 at 1-2.

By Order of this Court filed March 26, 2009, plaintiff was granted leave to proceed *in forma*

---

[1] Penile Plethysmography, as defined by the OMH in the Advancement to SOTP Phase II-IV Consent to Participate in Treatment, is intended to "assess sexual interests and measure treatment effectiveness. In this treatment, while wearing a sterilized gauge around the penis, a machine records any erection response that results from listening to and/or viewing depiction of sexual and non-sexual materials. This assessment occurs within a laboratory setting with complete privacy." Dkt. No. 3-3 at 8. For recent discussions of the wide range of opinion regarding the efficacy of PPG examinations and their proper role in sex offender treatment programs, see *United States v. Rhodes*, 552 F.3d 624, 626-29 (7th Cir. 2009) (finding that challenge to PPG as condition of supervised release not ripe where condition would become effective only after defendant served more than ten years imprisonment and several other conditions were met); *United States v. Weber*, 451 F.3d 552, 561-66 (9th Cir. 2006) (requirement of PPG testing as part of sex offender treatment program imposed as a condition of supervised release requires heightened procedural protections).

[2] Two other CNYPC detainees have filed § 1983 actions in the Northern District challenging these same aspects of the SOTP. See *Pratt v. Hogan*, No. 6:08-CV-1003, 2009 WL 1916284 (N.D.N.Y. Jul. 6, 2009) (Hurd, J.) (injunctive/declaratory relief claims dismissed pursuant to *Younger* abstention; defendants granted qualified immunity from claims for money damages); *McChesney v. Hogan*, No. 9:08-CV-1186, Report-Recommendation that motion for injunctive relief be denied, 2009 WL 607398 (N.D.N.Y. Dec. 23, 2008) (Peebles, M.J.), *adopted,* 2009 WL 607398, at *7 (N.D.N.Y. Mar. 9, 2009) (Mordue, C. J.). McChesney also claims that the SOTP requirement that he compile an autobiography is unconstitutional. *McChesney*, 2009 WL 607398, at *1.

*pauperis* and the U.S. Marshal was directed to effect service of process on the defendants. Dkt. No. 5. Plaintiff's request for the issuance of a temporary restraining order was denied. Defendants were directed to file a response to the preliminary injunction motion. *Id*. at 2-3.

Defendants have responded in opposition to plaintiff's motion for injunctive relief. Dkt. No. 8. Defendants also filed a "cross-motion" seeking dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3]

These motions are before the Court for consideration.[4]

## II.   Motion to Dismiss Standard

In deciding a Rule 12(b)(6) dismissal motion, "the court must accept the material facts alleged in the complaint as true, and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836 (1994).[5] The plaintiff must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007) (italics in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

---

[3] Plaintiff has not filed a response to defendants' motion to dismiss.

[4] The parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded for purposes of this motion. Any appeal taken from this Memorandum-Decision and Order, if appropriate, will be to the Court of Appeals for the Second Circuit.

[5] The "complaint" includes any written instrument attached to it as an exhibit and any statements or documents incorporated into the complaint by reference. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995); Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

The burden undertaken by the moving party is substantial, as the question presented by the motion to dismiss is not whether the non-moving party is likely ultimately to prevail, "but whether the claimant is entitled to offer evidence to support the claims." *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (other citations omitted). In order to withstand a motion to dismiss, a complaint must plead enough facts to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed.R.Civ.P. 15(a) ("The court should freely give leave when justice so requires.").

**III.   First Amendment Claims**

Plaintiff identifies himself as an atheist.[6] Since his placement at CNYPC, plaintiff has been assigned to the SOTP. Participation in the SOTP has "subjected [plaintiff] to religious practices and rituals." Dkt. No. 1 at 2. The "Good Lives Model and Boundaries Programs" teach the participants that they must "believe in something denoted as spirituality." *Id*. at 3. In addition, the SOTP includes Dialectic Behavior Therapy, which teaches "the rituals and practices" of Buddhism. *Id*. The SOTP also utilizes several "Hazeldon products which incorporate Christian beliefs and practices." *Id*. These programs include "From the Inside Out," "Growing Up Male," "Problem Solving" and "Anger Management."[7]

---

[6] The following facts are drawn from plaintiff's complaint and are accepted as true for purposes of the pending motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Boykin v. KeyCorp*, 521 F.3d 202, 204 (2d Cir. 2008).

[7] In his memorandum in support of the motion for injunctive relief, plaintiff states that the Hazeldon products are "Christian based and incorporate the 12 steps/12 traditions of A.A. (Alcoholics Anonymous)." Dkt. No. 3 at 3.

The First Amendment, made applicable to states by the Fourteenth Amendment, states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. The First Amendment embraces two fundamental concepts: "freedom to believe and freedom to act" on one's beliefs. *Cantwell v. Connecticut,* 310 U.S. 296, 303 (1940). The First Amendment's Establishment Clause prohibits government from officially preferring one religious denomination over another. Thus, "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982); *Skoros v. City of New York*, 437 F.3d 1, 16 (2d Cir. 2006). The First Amendment also protects individuals against "government compulsion either to do or refrain from doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required by one's religion." *Mozert v. Hawkins County Bd. of Educ.*, 827 F.2d 1058, 1066 (2d Cir. 1987), *cert. denied*, 484 U.S. 1066 (1988).

Defendants urge dismissal of plaintiff's First Amendment claims, arguing that he has failed to state a cognizable claim under either the Establishment Clause or the Free Exercise Clause. Dkt. No. 8-2 at 7-9. Defendants contend that the state law pursuant to which plaintiff is confined "was clearly enacted for secular purposes" and that the purposes of the SOTP "are clearly secular as well." *Id*. at 7-8. With respect to the particular treatment programs complained of by plaintiff, defendants maintain that dismissal is warranted because there is "no proof" that the programs "either advance or inhibit religion;" there is "no evidence" that the programs "foster any entanglement with religion;" and "no proof" of "governmental compulsion impacting upon his atheistic beliefs or practices." *Id*. at 8-9.

The question presented by defendants' motion to dismiss is not whether plaintiff has or can

5

adduce facts sufficient to prove his First Amendment claims. It may become clear, at summary judgment or at some later stage in the litigation, that plaintiff's claims are not adequately supported. But at this early stage, the Court must accept plaintiff's allegations as true and may not dismiss the case unless is clear that it would be impossible for plaintiff to make out a legally cognizable claim.

Reading plaintiff's complaint liberally and accepting the well-pleaded allegations thereof as true, the Court finds that the First Amendment claim is sufficient to withstand defendants' motion to dismiss. Atheism is subject to the protections of the First Amendment. *Wallace v. Jaffree,* 472 U.S. 38, 52-53 (1985) ( "the Court has unambiguously concluded that the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all."); *McChesney*, 2009 WL 607398, at *6 (Peebles, M.J.); *Alexander v. Schenck*, 118 F.Supp. 2d 298, 300-02 (N.D.N.Y. 2000) (Kahn, J.). Plaintiff identifies himself as an atheist, and alleges that he "has been subjected to religious practices and rituals" in the course of participating in the SOTP. Dkt. No. 1 at 2. Plaintiff claims that portions of the program are based upon Zen Buddhism and Christianity and that the SOTP "teach[es] that you have to believe in something denoted as spirituality." *Id*. at 2-3. Plaintiff alleges that he is compelled to participate in these faith-based programs in order to secure his release from CNYPC, and that this compelled participation violates his "right to believe or not as my conscience dictates." *Id*. at 3, 5. *See, e.g., Warner v. Orange County Dept. of Probation*, 115 F.3d 1068, 1075 (2d Cir. 1997) (holding that because the plaintiff was sent to Alcoholics Anonymous as a condition of his probation, without offering a choice of other providers, he was "plainly" coerced in violation of the Establishment Clause); *Alexander*, 118 F.Supp.2d at 301 (prisoner ordered to attend Alcohol and Substance Abuse Treatment Program was "coerced" for purposes of First Amendment).

Defendants' motion to dismiss plaintiff's First Amendment claim is denied. Accordingly, the Court will address plaintiff's motion for preliminary injunctive relief.

The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. As the Second Circuit noted in *Covino v. Patrissi,* 967 F.2d 73 (2d Cir. 1992), the movant must show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *Id*. at 77 (affirming district court's denial of inmate's request for preliminary injunction). Where a movant seeks relief which will alter, rather than maintain, the status quo, or which will provide him with substantially all the relief sought, the requested injunction is properly characterized as mandatory rather than prohibitory. A party seeking a mandatory injunction must make a "clear" or "substantial" showing of the likelihood of success, as well as irreparable harm should the injunction not be granted. *Jolly v. Coughlin*, 76 F.3d 468, 473-74 (2d Cir. 1996).

Plaintiff asks that this Court issue a preliminary injunction prohibiting defendants from mandating participation in faith-based SOTP programs. Dkt. No. 3-2. The Court treats plaintiff's motion as seeking mandatory rather than prohibitory relief. Accordingly, plaintiff must make a clear or substantial showing of the likelihood of success on the merits of his claims.

Where a deprivation of constitutional rights is alleged, specific proof of irreparable injury is not required. *See e.g., Mitchell v. Cuomo*, 748, F.2d 804, 806 (2d Cir. 1984). For purposes of this motion, defendants do not contest plaintiff's assertion that he will suffer irreparable harm if the requested relief is not granted. *See* Dkt. No. 8-2 at 6. *See McChesney v. Hogan,* No. 9:08-CV-1186, Report-Recommendation, 2009 WL 607398, at *3 (N.D.N.Y. Dec. 23, 2008), *adopted,* 2009

WL 607398, at *7 (N.D.N.Y. Mar. 9, 2009) (Mordue, C.J.).

A party seeking injunctive relief must also demonstrate a likelihood of succeeding on the merits of a claim, or evidence that establishes sufficiently serious questions going to the merits of such a claim and a balance of hardships tipping decidedly toward the party seeking such relief. *Covino*, 967 F.2d at 77.

While the Court has found that plaintiff's allegations are sufficient to withstand defendants' Rule 12(b)(6) motion to dismiss, the present record does not contain evidence sufficient to warrant the issuance of injunctive relief.  The record before the Court consists only of plaintiff's description of these programs and his claim that defendants are "proselytizing Christianity" and mandating his participation in faith-based programs in contravention of his avowed atheism.  Plaintiff has not presented the Court with program materials or other evidence demonstrating a clear or substantial likelihood of success on the merits of his claim that SOTP programs such as Dialectic Behavior Therapy, "The Good Lives Model" and various Hazeldon programs are, in fact, religious in nature in First Amendment terms.  *Compare Warner*, 115 F.3d at 1075 (finding a "Twelve Steps" program which "placed a heavy emphasis on spirituality and prayer" and instructed belief in "a Power greater than ourselves" was an intensely religious event) with *Boyd v. Coughlin*, 914 F.Supp. 828, 833 (N.D.N.Y. 1996) (McAvoy, J.) ("This court is unaware of a controlling decision that equates spirituality with religion, such that any reference to spirituality in ... [a] treatment program ... runs afoul of the First Amendment.").  See *McChesney,* 2009 WL 607398, at *4.  Plaintiff has also failed to support his motion with evidence that he was coerced into participating in the alleged religious exercises or rituals by virtue of his enrollment in the SOTP, and that no secular alternatives were made available to patients raising religious objections to the content of the treatment programs.  *See*

*Warner*, 115 F.3d at 1075 (recognizing that consideration of plaintiff's First Amendment claim "would be altogether different" if he had been offered a reasonable choice of therapy providers).

Accordingly, plaintiff's motion for preliminary injunctive relief is denied.

### IV.     Fifth Amendment Claims

SOTP participants seeking to advance to Phase II - IV of the program are asked to consent to polygraph and PPG examinations. Dkt. No. 1 at 3.[8] The Advancement Contract signed by plaintiff in December, 2008 contains the following general disclaimer: "[t]he court, your attorney, the Attorney General's Office, and other relevant participants in your commitment process have access to the information you reveal regarding your sexual offending behaviors and may use that information during the civil management process." Dkt. No. 3-3 at 7.[9] The section of the Advancement Contract specifically describing the required polygraph examinations includes the following statement: "The courts may choose to use any information gathered from these examinations." *Id*. at 8.[10] The Advancement Contract advises SOTP participants that a refusal to undergo the requested examinations "may slow or prevent advancement in SOTP phases of treatment." *Id*.

The Fifth Amendment's privilege against self-incrimination, which applies to the states via the Fourteenth Amendment, provides that "[n]o person ... shall be compelled in any criminal case to

---

[8] See note 5 *infra*.

[9] Plaintiff references these documents as exhibits (C) and (D) to the complaint. Although the complaint as filed does not include these exhibits, the materials (as well as the documents identified as exhibits A and B), were filed as exhibits in support of plaintiff's motion for injunctive relief. Both submissions were filed on the same day.

[10] A previous version of the Advancement Contract advised that polygraph examinations "are not designed to be incriminating or to be used in court." See Dkt. No. 3-3 at 5.

be a witness against himself." U.S. Const. amend. V. The privilege

> not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."

*Minnesota v. Murphy,* 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973)). The right not to answer potentially incriminating questions however, is not absolute. Rather, "[t]he prohibition against compelling the testimony of a witness in any setting is predicated upon there being a real danger that the testimony might be used against the witness in later criminal proceedings." *Andover Data Services, a Div. of Players Computer, Inc. v. Statistical Tabulating Corp.* 876 F.2d 1080, 1082 (2d Cir. 1989). Thus, "[i]t is ... black-letter law that a witness cannot assert a Fifth Amendment privilege not to testify 'if the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness.'" *Pillsbury Co. v. Conboy*, 459 U.S. 248, 273 (1983) (Blackmun, J., concurring) (quoting *Brown v. Walker,* 161 U.S. 591, 597 (1896)).

Outside of the prison context, the Supreme Court has "described compulsion in relatively broad terms." *Ainsworth v. Risley,* 244 F.3d 209, 213 (1st Cir. 2001), *vacated on other grounds,* 536 U.S. 953 (2002). The Court has held that "certain types of penalties are capable of coercing incriminating testimony," including: termination of employment, the loss of a professional license, ineligibility to receive government contracts, and the loss of the right to participate in political associations and to hold public office. *McKune v. Lile*, 536 U.S. 24, 49-50 (2002) (O'Connor, J., concurring in the judgment) (citing cases). The Supreme Court has defined "compulsion" as anything that makes the exercise of the right "costly." *Spevack v. Klein,* 385 U.S. 511, 515 (1967).

See *Lefkowitz v. Cunningham,* 431 U.S. 801, 808 (1977) (rejecting "the notion that citizens may be forced to incriminate themselves because it serves a governmental need.").

Writing for a plurality of the Court in *McKune*, Justice Kennedy concluded that the setting in which the compulsion arises is an integral part of the constitutional analysis. *Id.*, 536 U.S. at 36 ("The fact that these consequences are imposed on prisoners, rather than ordinary citizens, moreover, is important in weighing respondent's constitutional claim."). Noting that "[a] broad range of choices that might infringe constitutional rights in free society fall within the expected conditions of confinement of those who have suffered a lawful conviction," *id.*, Justice Kennedy concluded that the "atypical and significant hardship" analysis articulated in *Sandin v. Connor*, 515 U.S. 472 (1995) "provides a reasonable means of assessing whether the response of prison administrators to correctional and rehabilitative necessities are so out of the ordinary that one could sensibly say they rise to the level of unconstitutional compulsion." *McKune*, 536 U.S. at 41. Concurring with the judgment reached by the *McKune* plurality, that withholding certain privileges upon an inmate's refusal to participate in a mandatory sex offender treatment program does not constitute a compulsion that encumbers the constitutional right not to incriminate oneself, Justice O'Connor wrote separately to express her opinion that the Fifth Amendment compulsion standard is broader that *Sandin*'s "atypical and significant hardship" standard. *Id.*, 536 U.S. at 48 (O'Connor, J., concurring).[11]

---

[11] The inmate plaintiff in *McKune*, complained that he faced transfer to a less-desirable maximum security prison, and that he also faced the loss of his personal television set, less access to prison organizations and the gym area, a reduction in certain pay opportunities and restricted visitation rights. *McKune*, 536 U.S. at 39. Justice Kennedy, writing for a plurality, emphasized that the decision not to participate in the Kansas Sexual Abuse Treatment Program "did not extend [the prisoner's] term of incarceration" nor did it "affect his eligibility for good-time credits or parole." *Id.*, 536 U.S. at 38.

In this case, plaintiff, a civil detainee faced with prolonged civil detention if he refuses to submit to polygraph and PPG examinations, has adequately alleged that he faces "compulsion" that is constitutionally significant even under the *Sandin* analysis utilized by the *McKune* plurality.

Notwithstanding the foregoing, however, the Court finds that plaintiff has failed to state a Fifth Amendment claim because neither polygraph nor PPG examinations violate the Fifth Amendment privilege against self-incrimination. The Second Circuit has held that requiring the use of a polygraph examination for a convicted sex offender as a condition of supervised release does not violate the privilege against self-incrimination because polygraph evidence is generally inadmissible, and the individual would be free to challenge that evidence should it be used against him in a future proceeding. *United States v. Johnson,* 446 F.3d 272, 278-80 (2d Cir. 2006); *United States v. Santiago*, No. 03 Cr. 664, 2008 WL 1959548, at *1 (S.D.N.Y. May 5, 2008); *see also United States v. Dotson*, 324 F.3d 256, 261 (4th Cir. 2003) (polygraph test, "inadmissible in nearly every circumstance at trial," may be required as a condition of supervised release); *United States v. Zinn,* 321 F.3d 1084, 1090-92 (11th Cir. 2003) (requiring polygraph testing as a condition of supervised release generally does not violate the Fifth Amendment). *Compare United States v. Weber*, 451 F.3d 552, 568 n. 17 (9th Cir. 2006) (defendant subject to polygraph testing as requirement of supervised release retains Fifth Amendment rights "unless granted use-and-derivative-use immunity").

The Court also find that results of PPG examinations do not implicate plaintiff's Fifth Amendment right against self-incrimination because the procedure itself is not testimonial but, rather, is an assessment of an individual's physical reactions to various stimuli. *See McChesney,* 2009 WL 607398, at *5; *Walrath v. United States,* 830 F.Supp. 444, 446 (N.D.Ill. 1993). Moreover,

courts asked to consider the admissibility of PPG examinations have uniformly refused to do so, finding that PPG results fail to meet scientific validity prong for admissibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-90 (1990)).  *See Doe ex. rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1266 (9th Cir. 2000) ("courts are uniform in their assertion that the results of penile plethysmographs are inadmissible as evidence because there are no accepted standards for this test in the scientific community."); *United States v. Powers*, 59 F.3d 1460, 1470-71 n. 13 (4th Cir. 1995) (appellant "has not provided, and we have not found, any decisions acknowledging the validity of the use of penile plethysmography other than in the treatment and monitoring of sex offenders.").

Based upon the foregoing, the Court finds that the allegations of the complaint, as drafted, do not state a claim upon which relief may be granted for the violation of plaintiff's Fifth Amendment right against self-incrimination stemming from polygraph and/or PPG examinations conducted as part of the SOTP.  This aspect of defendants' motion to dismiss is granted.[12]

## V.   Qualified Immunity

Defendants raise the affirmative defense of qualified immunity.  Dkt. No. 8-2 at 11-12. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003) (quoting *McCardle v. Haddad*, 131 F.3d 43, 50 (2d Cir. 1997)).

The Second Circuit has recognized that the availability of qualified immunity may "turn[] on

---

[12] In light of this ruling, the Court need not address plaintiff's motion for injunctive relief.  Defendants' claim that they are entitled to qualified immunity from damages on this claim is also moot.

factual questions that cannot be resolved at [the motion to dismiss] stage of the proceedings." *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 793 (2d Cir. 2002).[13]  Thus, where the "objective reasonableness" of defendants' actions depends at least in part on what information they had regarding the substance of plaintiff's complaints, an adjudication as to the applicability of the qualified immunity affirmative defense on the basis of the pleadings alone would be premature.

Although a factual basis for affording qualified immunity to defendants on plaintiff's First Amendment claims may arise during the course of discovery, the Court cannot at this early stage of the proceeding, accepting all of plaintiff's allegations as true, conclude that defendants are entitled to qualified immunity as a matter of law.  *See Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 255 (2d Cir. 2001); *Bailey v. Pataki*, 08 Civ. 8563, 2009 WL 2001178, at *6 (S.D.N.Y. Jul. 10. 2009).  Accordingly, defendants' motion to dismiss plaintiff's First Amendment claims for money damages based on qualified immunity is denied, without prejudice to renew.

## VI.    Conclusion

Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted is granted in part and denied in part.  The well-pleaded allegations of the complaint sufficiently allege a violation of plaintiff's First Amendment rights resulting from his required participation in faith-based treatment programs.  Plaintiff's motion for preliminary injunctive relief is denied.  Defendants' request for dismissal of plaintiff's First Amendment claims for money damages on qualified immunity grounds is denied, without prejudice.

---

[13] In *Stephenson*, the court advised that a "defendant should press a qualified immunity defense during pretrial proceedings so that such a claim can be disposed of by summary judgment where possible, or factual disputes material to the defense can be identified and presented to the jury." *Stephenson*, 332 F.3d at 76.

Plaintiff's Fifth Amendment claims are dismissed, without prejudice.

WHEREFORE, on the basis of the above, it is hereby

ORDERED, that defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **granted in part and denied in part** as set forth above, and it is further

ORDERED, that plaintiff's motion for preliminary injunctive relief is **denied**, and it is further

ORDERED, that defendants file an answer to complaint **no later than October 31, 2009**, and it is further

ORDERED, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties.

IT IS SO ORDERED.

Dated:  September 28, 2009

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge